ROBERT W. BROWNE, ET AL.
*vs.*
CHARLES A. WOOD

CLISTA M. WOOD
*vs.*
ROBERT W. BROWNE, ET AL.

Cumberland.   Opinion, November 15, 1955.

*Verrill, Dana, Walker, Philbrick & Whitehouse,*
*Wilfred A. Hay & John E. Hanscomb,* for plaintiff.

*Elton H. Thompson,*
*Walter E. Murrell,* for defendant.

SITTING: FELLOWS, C. J., WILLIAMSON, WEBBER, BELIVEAU, TAPLEY, CLARKE, JJ.

CLARKE, J. On exceptions by Charles A. Wood and Clista M. Wood.

The cases were tried together before a referee. The report by the referee is dated October 26, 1954.

The plaintiff in the case of *Wood* v. *Browne* and the defendant in the case of *Browne* v. *Wood* being allegedly aggrieved except to the acceptance of the referees' report filed in the Superior Court for Cumberland County.

These are cross actions of trespass *quare clausum* by adjoining land owners arising out of a controversy as to the location of the common boundary.

A corporation acquired and combined two tracts of land. Subdividing the tract into house lots, the plan was recorded and known as a plan of Deering Village. There were thirty-

three lots including those of the plaintiffs' shown on the plan.

Plaintiff Browne acquired Lot No. 37, plaintiff Wood acquired lot No. 36. Both lots 36 and 37 lie on the easterly side of Brook Road which road at that point on the plan runs substantially north and south and the south line of lot No. 36 and the north line of lot No. 37 is the common boundary. Both plaintiffs acquired their respective lots by deeds in which the lots were described and conveyed by reference to the plan whereby the plan was made a material and essential part of each conveyance with the same force and effect as if copied into deeds. *Thomas* v. *Patten,* 13 Me. 329 and 333; *Lincoln* v. *Wilder,* 29 Me. 169 and 179; *Perkins* v. *Jacobs,* 124 Me. 347.

There was an erroneous plotting of the tract upon the plan. The referee to whom the cases were referred invoked the principle laid down by our court in *Witham* v. *Cutts,* 4 Me. 31; *Wyatt* v. *Savage,* 11 Me. 429 and later reaffirmed in *Susi* v. *Davis et al.,* 133 Me. 354, "Grantees in severalty of lots of land laid off on a particular plot hold, in proportion to their respective conveyances, where actual measurements not controlled otherwise are variant in wide departure from those given in the deeds. It must be presumed in the absence of circumstances showing the contrary, that variance arose from an imperfect measurement of the whole piece of land. Deficiency must be divided among the several lots proportionately to their respective content as shown by the plot. - - - The same principle maintains where the real measurements are in excess of those specifically designated upon the plot."

In the phrase of surveyors there are overruns with material excess of land. Without error in either law or in finding of fact the referee in these cases found by reason of mistake in the survey and plotting an overrun and material

excess of land. Both plaintiffs asserted claim to the overrun. Construction of the deeds and their legal effect was a question of law; but the location of the common boundary was a question of fact. *Abbott* v. *Abbott,* 51 Me. 575.

A careful study of the record, particularly of the several lots, their location, admeasurements and content evidences no error in fact on the part of the referee in finding that the problem narrows itself for practical purposes into the respective rights of lots 36 and 37 with relation to the overrun for the reason that the discrepancy resulting in the line of lots 68 to 71 inclusive appears inconsequential; the discrepancy resulting in the line of lots 2 to 11 inclusive does not appear a subject of issue inasmuch as the plan obviously excludes an area of undisclosed size and shape between the northerly line of lot 11 and the northerly line of the tract.

It is observed that in applying the stated principle to the present case it is conceded that the surplus or overrun should be absorbed by the thirty-three lots shown on the plan but due to the "layout" of the tract peculiar to the plan it is found that the application of the principle may be directed properly to the lots in controversy.

The overrun occasioned by error in survey and/or plotting reduced to actual dimensions and as related to lots 36 and 37 is a trapezoid with its easterly and westerly sides parallel. The area of this trapezoidal strip of surplus land is four hundred twenty-seven square feet. Proportionately lot 37 is entitled to two hundred sixty-two (262.0) square feet and lot 36 is entitled to one hundred sixty-five (165.0) square feet respectively of this surplus, both areas computed to the nearest square foot. These respective surplus areas to be parts of lots 36 and 37 respectively according to the

plan are described and physically set off in the following manner by the referee:

To lot 36 a strip of land in the form of a parallelogram one and sixty-five hundredths (1.65) feet wide on Brook Road and one hundred (100) feet long coinciding with the length or depth of lot 36 and adjoining it. To lot 37 a strip of land in the form of a trapezoid measuring two and ninety-nine hundredths (2.99) feet on Brook Road, and one hundred (100) feet long coinciding with the length or depth of lot 37 and measuring two and twenty-five hundredths (2.25) feet on its easterly end and adjoining lot 37.

With the dimensions of the lots and the common boundary as herein determined, which common boundary is determined to be located approximately midway of the overrun, it is apparent and so found that each of the defendants, claiming as he did benefit of the entire overrun entered upon and occupied the land of each of the plaintiffs and caused damage but not wilfully or knowingly.

The referee found damages in the sum of one hundred dollars in favor of each plaintiff.

At no time prior to the finding of the referee was the overrun designated with the plaintiffs' lots, the plaintiffs' interest therein that of tenants in common and undivided.

The record does not disclose clearly where and when the alleged trespass took place. The findings divided the overrun approximately half and half between the plaintiffs and assessed damages equally indicating the finding that the overrun was the sole subject of alleged damages. This assessment of the damages seems to be fair and equitable and properly arrived at in accordance with the record.

Many of the objections are to factual questions. It has long been the rule substantiated by cases too numerous to mention that whenever a single justice presides without a

jury his findings of fact will stand so long as there is evidence which shall support his findings.

Neither of the plaintiffs pleaded seizin. Both declarations were in trespass *quare clausum*. The general issue was not guilty. This plea puts into issue the question whether plaintiff's rightful possession has been disturbed by the defendant, *Bray* v. *Spencer*, 146 Me. 419.

Judgment in an action trespass *quare clausum* is not a bar by way of estoppel to a real action. This is true even if the defendant in the trespass suit pleads soil and freehold. Judgment in trespass does not necessarily decide title. *Bray* v. *Spencer, supra.*

It is not *res adjudicata* as to a real action pertaining to the same subject matter. The earlier judgment may, however, be conclusive by way of estoppel, only as to facts, without the existence and proof of which it could not have been rendered. *Hill* v. *Morse*, 61 Me. 541; *Smith* v. *Brunswick*, 80 Me. 189; *Kimball* v. *Hilton*, 92 Me. 214; *Harlow* v. *Pulsifer*, 122 Me. 472.

It is requisite that a plaintiff allege and prove that some of his land, in respect to which relief is sought is in the possession of the defendant. A writ of entry would have brought into issue the title itself and would have afforded the parties an apt remedy. Judgment upon an issue raised by proper and sufficient pleadings therein would have been conclusive as to title.

The justice presiding was correct in his acceptance of the report.

*Exceptions overruled.*